**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

PEGGY PANELLI )   3:08-cv-0295-RAM
and MICHELLE MOLNAR, )
) **ORDER**
        Plaintiffs, )
)
        vs. )
)
FIRST AMERICAN TITLE INSURANCE )
COMPANY dba FIRST AMERICAN )
TITLE and DOES I-X, )
)
        Defendants. )
_____)

      Before the court is Defendant's Motion for Summary Judgment. (Doc. #39.)[1] Plaintiffs have opposed the motion (Doc. #47), and Defendant has replied (Doc. #50). After a thorough review, the court grants the motion in part and denies the motion in part.

## I. BACKGROUND

      Plaintiffs Peggy Panelli and Michelle Molnar are former employees of Defendant First American Title Insurance Company. (Pls.' Compl. 1 (Doc. #1).) Plaintiffs bring this action against Defendant alleging sexual harassment, gender discrimination, age discrimination, retaliation, and disparate treatment based on gender and/or age. (*Id.* at 2-8.) Plaintiffs seek damages, costs, reasonable attorney's fees, and injunctive relief. (*Id.* at 8.)

      Defendant provides title insurance and escrow/closing services for real estate transactions. (Def.'s Mot. for Summ. J. 2 (Doc. #39).) Plaintiff Molnar was originally hired by Defendant in September 1985. (*Id.* at 3.) Molnar left Defendant's employ in 1992 and moved to Georgia. (*Id.*) Defendant rehired Molnar in October 1998 as a Commercial Escrow

---

[1] Refers to the court's docket number.

Officer. (*Id.*, Ex. 6.) Plaintiff Panelli originally was employed by Defendant in the early 1990s as a Resale Sales Representative until leaving to pursue a job as a real estate agent. (*Id.*) Panelli was rehired by Defendant in December 2001 as a Commercial Sales Representative. (*Id.*)

Plaintiffs allege they experienced a sexually hostile work environment, sexual harassment, gender discrimination, and age discrimination while employed by Defendant primarily because of the conduct and statements of Manager Devin Stone, Sales Manager Tyler Miller, Cory Miller, and Gary MacDonald. (Pls.' Compl. 3-6.) Plaintiffs claim, among other things, that these men often referred to women as "bitches"; would tell female employees "you look good today, I'd do you"; growled when observing women and commented "I'd do her"; and pantomimed sexual intercourse. (*Id.*) Molnar alleges Stone and Tyler Miller harassed her in the Fall of 2005 when they toured a project nearby a brothel. (Pls.' Opp. to Summ. J. 9 (Doc. #47).) According to Molnar, Stone and Tyler Miller pressured her to enter the brothel. (Pls.' Compl. 4.) When Molnar refused, Stone said, "Oh please Michelle, I want to go in and see if the wallpaper is 'scratch & sniff.'" (*Id.*) Molnar asserts that Tyler Miller suggested everyone eat at the brothel and said, "we can have the 'up-the-butt chicken special.'" (*Id.*) Panelli alleges Stone physically intimidated her by refusing to let her pass while making inquiry as to how good looking he must be. (*Id.* at 5.) Panelli claims at a lunch with Stone, Tyler Miller, and MacDonald, Stone and Tyler Miller discussed a marketing representative with "big tits" and said "all she had to do was just shake her tits . . . and she would get whatever she wanted . . . ." (Pls.' Opp. to Summ. J., Ex. 9 at 28-29.) Panelli alleges that Stone and Miller continued to engage in inappropriate conduct at the lunch. (*Id.*)

Plaintiffs also allege that Defendant retaliated against them. (Pls.' Compl. 4-8.) Molnar alleges that Stone retaliated against her by stripping her of her expense account, planning the trip to the brothel, pressuring her to enter the brothel, and ridiculing her for not entering the brothel. (*Id.*) Molnar claims she was subject to retaliation from Stone because she did not exhibit the type of subordinate demeanor Stone expects from women. (*Id.* at 4.) According to

1  Molnar, the termination of her employment on April 19, 2007, constituted retaliation. (*Id.*)
2  Panelli claims that after she complained on February 28, 2007, about the sexual hostility to
3  which she was subject, Stone immediately took retaliatory action by slamming his fist on
4  Panelli's desk and stating that he "should fire [her] right now." (*Id.* at 5.) According to Panelli,
5  Defendant presented her with a substandard evaluation the next day in retaliation for her
6  complaints. (*Id.*) Additionally, Panelli asserts that she suffered retaliatory discharge from
7  Defendant's employ on May 9, 2007. (*Id.*)

## **II. LEGAL STANDARD**

9  The purpose of summary judgment is to avoid unnecessary trials when there is no
10  dispute over the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d
11  1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving
12  party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*,
13  477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery
14  and disclosure materials on file, and any affidavits show that there is no genuine issue as to any
15  material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.
16  R. Civ. P. 56(c)). Where reasonable minds could differ on the material facts at issue, however,
17  summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.
18  1995), *cert. denied*, 516 U.S. 1171 (1996). In deciding whether to grant summary judgment, the
19  court must view all evidence and any inferences arising from the evidence in the light most
20  favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

21  The moving party bears the burden of informing the court of the basis for its motion,
22  together with evidence demonstrating the absence of any genuine issue of material fact.
23  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden,
24  the party opposing the motion may not rest upon mere allegations or denials of the pleadings,
25  but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S.
26  at 248. Although the parties may submit evidence in an inadmissible form, only evidence
27  which might be admissible at trial may be considered by a trial court in ruling on a motion for

summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### III. DISCUSSION

**A.  AGE DISCRIMINATION**

Defendant argues that it is entitled to summary judgment on Plaintiffs' claims for age discrimination because neither Plaintiff can establish the essential elements of her age discrimination claim. (Def.'s Mot. for Summ. J. 20-23.) Plaintiffs indicate that they do not intend to pursue their age discrimination causes of action. (Pls.' Opp. to Summ. J. 1.)

In view of Plaintiffs' concession, the court will grant summary judgment as to Plaintiff Panelli's age discrimination claim.

**B.  STATUTE OF LIMITATIONS**

Before turning to Plaintiffs' remaining claims, the court must determine which acts Plaintiff Molnar may rely in support of her claims. Defendant argues that Molnar's main allegation of harassment, the brothel incident, is time barred because it occurred in the Fall of 2005. (Def.'s Mot. for Summ. J. 15.) According to Defendant, because Molnar filed her charge of discrimination with NERC on July 23, 2007, she may not rely on any alleged harassing conduct that occurred more than 300 days before that date. (*Id.*)

///

4

Under 42 U.S.C. § 2000e-5(e)(1), where a plaintiff institutes proceedings with a state agency, the plaintiff must file a charge of discrimination with the Equal Employment Opportunities Commission within 300 days "after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000e-5(e)(1). "A claim is time barred if it is not filed within [this] limit." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). When an act "occurred" for purposes of Title VII varies depending on the type of claim. *Id.* at 110.

1.  Discrimination and Retaliation

For discrimination and retaliation claims, the time for filing a charge of discrimination with the EEOC begins when the discriminatory or retaliatory act occurs. *Id.* at 113. Therefore, if a complaint alleges discrimination based on discrete acts outside of the statutory time period, the occurrence of additional discrete acts within the statutory time period does not make those previous acts timely. *Id.* at 111.

Here, with respect to Molnar's discrimination and retaliation claims, Molnar asserts she suffered several discriminatory acts from September 2005 to April 2007. (Def.'s Mot. for Summ. J., Ex. 20 at 61; Pls.' Compl. 4.) Molnar filed her charge on July 23, 2007. Because only discrete acts that took place within the timely filing period are actionable, only those acts that occurred 300 days before July 23, 2007, are actionable. In other words, Plaintiff can assert retaliation and discrimination claims based on incidents that occurred between September 26, 2006, and August 7, 2007. Thus, the brothel incident, which occurred in the Fall of 2005, is outside this time period and is untimely as a basis for Molnar's discrimination and retaliation claims.[2]

---

[2] To the extent Molnar's discrimination claim can be construed as a pattern-or-practice claim, the court concludes that Molnar's claim is not properly analyzed under the pattern-or-practice framework. Molner's complaint focuses on discrete acts of discrimination rather than a pattern or practice. "[P]attern-or-practice claims cannot be based on 'sporadic discriminatory acts'but rather must be based on discriminatory conduct that is widespread throughout a company or that is a routine and regular part of the workplace." *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)). Thus, to demonstrate a prima facie case of pattern-or-practice discrimination, the plaintiff must establish by "a preponderance of the evidence that . . . discrimination was the company's standard operating procedure -- the regular rather than the unusual practice." *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984) (internal quotation marks and citation omitted). Additionally, Molnar has not presented the type

5

### 2. Hostile Work Environment

Unlike discrete discrimination and harassment claims, hostile work environment claims are based on the "cumulative affect of individual acts." *Morgan*, 536 U.S. at 115. As a result, these claims necessarily involve allegations of repeated conduct. *Id.* For a hostile work environment claim, it does not matter that some of the events supporting the claim occurred before the statutory time period. *Id.* at 117. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment claim may be considered by a court for the purposes of determining liability." *Id.*

"A court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id.* at 120. To determine if conduct is a part of the same unlawful employment practice, the court considers whether the conduct was "'sufficiently severe or pervasive,' and whether the earlier and later events amounted to the 'same type of employment actions, occurred relatively frequently, or were perpetrated by the same managers.'" *Porter v. Cal. Dep't Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) (*quoting Morgan*, 536 U.S. at 116, 120). Here, Molnar's most recent allegations are that Gary MacDonald stated that "he couldn't wait for the men to get a hold" of Cindy Dillon in early 2007, Tyler Miller said "I'd do her" toward Molnar and imitated Austin Powers, and that Devin Stone asked her on numerous occasions if he was better looking than one of her clients. (Pls.' Opp. to Summ. J., Ex. 4 at 66-67, 70, 72.) Each of these alleged comments is sexual in nature and was spoken by the same three individuals Molnar contends were present during the brothel incident in the Fall of 2005. Because Molnar's allegations concerning the brothel incident involve sexually charged comments and involved the same three actors as her most recent allegations, the brothel incident is part of the same alleged hostile work environment practice. Thus, the

---

of statistical evidence generally used to demonstrate a pattern or practice of discrimination. *See Lyons v. England*, 307 F.3d 1092, 1107 n.8 (9th Cir. 2002) (citations omitted) (noting that generally, to demonstrate pattern or practice of discrimination, plaintiff will use statistical evidence of employer's past treatment of the protected group and testimony from protected class members outlining specific instances of discrimination).

brothel incident is not time-barred and will be considered in assessing Molnar's claim that she was subject to a hostile work environment. Whether all of this conduct when taken together rises to the level of sufficiently severe or pervasive will be discussed below.

### C. GENDER DISCRIMINATION - DISPARATE TREATMENT

Plaintiffs assert they were subjected to disparate treatment based on gender. (Pls.' Compl. 8.) Defendant argues that it is entitled to summary judgment on Plaintiffs' gender discrimination claims because Plaintiffs cannot establish the essential elements of a gender discrimination claim either through direct or circumstantial evidence. (Def.'s Mot. for Summ. J. 16.)

Title VII makes it an unlawful employment practice to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Sexual harassment is a species of gender discrimination and thus constitutes a violation of Section 2000e-2. *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).

To prevail, a plaintiff must establish a prima facie case of discrimination by presenting evidence that "gives rise to an inference of unlawful discrimination." *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148 (9th Cir. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff can establish a prima facie case of discrimination through either the burden shifting framework set forth in *McDonnell Douglas* or with direct or circumstantial evidence of discriminatory intent. *See Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007) ("When responding to a summary judgment motion . . . [the plaintiff] may proceed using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer].") (citation omitted) (alterations in original).

The plaintiff carries the initial burden of establishing a prima facie case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and

7

does not even need to rise to the level of a preponderance of the evidence. The plaintiff need only offer evidence which 'gives rise to an inference of unlawful discrimination.'" *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (citation omitted). To establish a prima facie case of disparate treatment discrimination, Plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) similarly situated individuals outside of her protected class were treated more favorably. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (citing *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000)). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. *McDonnell Douglas*, 411 U.S. at 802. If the defendant provides such a justification, the burden shifts back to the plaintiff to show that the defendant's justification is a mere pretext for discrimination. *Id*. at 804.

      1.      <u>Plaintiff Molnar</u>

Molnar fails to establish a prima facie case of gender discrimination because she fails to show that similarly situated individuals outside of her protected class were treated more favorably. First, Molnar asserts that Tyler Miller and Gary MacDonald received preferential treatment because they could make rude comments and get away with it while she could not. (Pls.' Opp. to Summ. J., Ex. 4 at 46-47.) However, Molnar admits that she, herself, never made any rude comments and, thus, did not know whether that perception was valid. (*Id*., Ex. 4 at 106.) Therefore, Molnar fails to put forth evidence showing that Tyler Miller and Gary MacDonald were actually treated more favorably than she was in this regard. Second, Molnar claims that Stone and Miller treated sexually attractive women more favorably. (*Id*. at 8.) Molnar's allegations that other women, who are members of her protected class, were treated more favorably than her because they were more sexually attractive fails as an actionable theory for gender discrimination. Molnar must show that similarly situated individuals *outside* her protected class were treated more favorably than her. *Davis*, 520 F.3d at 1089 (9th Cir. 2008).

8

Molnar fails to present any other evidence demonstrating she suffered other "differential treatment" because of her gender. Accordingly, summary judgment must be granted to Defendant on Molnar's gender discrimination claim.

        2.      <u>Plaintiff Panelli</u>

Like Molnar, Panelli fails to establish a prima facie case of gender discrimination because she fails to show that similarly situated individuals outside of her protected class were treated more favorably. First, Panelli asserts that Devin Stone, Tyler Miller, and Gary MacDonald received preferential treatment. (Pls.' Opp. to Summ. J., Ex. 5 at 22.) However, Panelli stated in her deposition that Stone and Miller only received preferential treatment because of their management positions. (*Id.*, Ex. 5 at 85.) Although Panelli initially asserted that MacDonald received preferential treatment because of his gender (*Id.* at 281), she later stated that the sole basis for her opinion that he received preferential treatment was his former position as the President of Western Industrial Nevada and his community involvement. (Def.'s Mot. for Summ. J., Ex. 2 at 291-92.) Even though Panelli initially claimed each of these men received preferential treatment, her deposition testimony establishes that any differing treatment they received was not "because of" gender. Second, Panelli asserts, like Molnar, that other women were treated more favorably than her because they were more sexually attractive. (Pl.'s Opp. to Summ. J. at 22.) As discussed with respect to Molnar's claim, this is not an actionable theory for gender discrimination because Panelli must show that similarly situated individuals *outside* her protected class were treated more favorably than her. *Davis*, 520 F.3d at 1089 (9th Cir. 2008). Like Molnar, Panelli fails to present any other evidence demonstrating she suffered other "differential treatment" because of her gender. Accordingly, summary judgment must be granted to Defendant on Panelli's gender discrimination claim.

**D.**    **RETALIATION**

Plaintiffs assert that Defendant retaliated against them because they opposed sexual harassment and misogyny. (Pls.' Opp. to Summ. J. 32.) Defendant argues that Plaintiffs' retaliation claims fail as a matter of law. (Def.'s Mot. for Summ. J. 20.) Defendant contends

that Molnar fails to point to any specific protected activity in which she engaged. (*Id.*) Additionally, Defendant argues that Panelli cannot show a causal link between her complaint of harassment and her termination. (*Id.*)

To establish a prima facie case of retaliation, a plaintiff must demonstrate that "(1) she engaged in an activity protected under Title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004) (citing *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)). If a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for its decision. *Ray*, 217 F.3d at 1240. If the defendant demonstrates such a reason, the burden shifts back to the plaintiff to show that the defendant's reason was a mere pretext for a discriminatory motive. *Id*.

1.   Plaintiff Molnar

Molnar fails to establish a prima facie case of retaliation because she cannot show that she engaged in an activity protected under Title VII. The opposition clause of 42 U.S.C. § 2000e-3(a) states in relevant part, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII] . . . ." 42 U.S.C. § 2000e-3(a). Verbal complaints of discrimination qualify as "protected activity." *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1068 (9th Cir. 2003). However, "not every act by an employee in opposition to . . . discrimination is protected." *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978). "The opposition must be directed at an unlawful employment practice of an employer . . . [and must be] reasonable in view of the employer's interest in maintaining a harmonious and efficient operation." *Id*. Furthermore, "[t]he employee's statement cannot be 'opposed to an unlawful employment practice' unless it refers to *some* practice by the employer that is allegedly unlawful." *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983)(emphasis in original).

Here, Molnar asserts that she complained of harassing conduct when she made a verbal complaint to Diane Erickson, the Northern Nevada Escrow Manager. (Pl.'s Opp. to Summ. J. 8, 32.) Molnar describes her conversation with Erickson as follows:

> When she was in my office, you know, we shut the door and I asked her what was going on in the office and why am I being – All of the sudden I went from top notch employee to I'm in trouble every day, what did I do and what can I do to make it better, and her answer pretty much was take a blind eye to everything and just do your job, save money like I am, that is what she said, save money like I am. I'm just working towards my retirement and I just take a blind eye to everything, and I just was in shock that was my answer.
>
> Before she left – She was right at the door and I said well, Diane, thanks for the talk. I just want to know if I needed a boob job by Monday, and she just laughed because she knew I hit it right on the nose. I got it. I saw what was happening right then. She had absolutely no answer for me.

(*Id.*, Ex. 4 at 123-24.) Molner contends that the exchange with Erickson was her way of making a complaint and that she considered what she told Erickson to constitute a complaint. (*Id.*, Ex. 4 at 51-52, 124-26.) Despite Molnar's intimation that she would receive better treatment if she got a "boob job," her discussion with Erickson is devoid of any concrete reference to an allegedly unlawful practice by Defendant. As Defendant correctly argues, Molnar fails to identify any inappropriate comments, any alleged harassment or discrimination, or the identities of any alleged harassers. (Def.'s Reply 19 (Doc. #50).) In sum, Molnar's veiled comments do not constitute a complaint of an allegedly unlawful employment practice. *See Garcia-Paz v. Swift Textiles*, 873 F. Supp. 547, 560 (D. Kan. 1995) (noting that "employers need not approach every employee's comment as a riddle, puzzling over the possibility that it contains a cloaked complaint of discrimination" and that an employee's communications to the employer must "sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner"). Therefore, Molnar is unable to show that she engaged in protected activity under Title VII because her nebulous comments to Erickson are not adequately directed at an allegedly unlawful employment practice of Defendant. Accordingly, Defendant will be granted summary judgment on Molnar's retaliation claim.

///

2. <u>Plaintiff Panelli</u>

Panelli establishes a prima facie case of retaliation and offers evidence to sufficiently show a genuine issue of material fact as to whether Defendant's legitimate nondiscriminatory reasons for terminating her employment were pretextual.

Panelli demonstrates that she engaged in protected activity under Title VII by making a written complaint of sexual harassment on March 5, 2007. (Def.'s Mot. for Summ. J., Ex. 11.) Defendant subjected Panelli to an adverse employment action when it terminated her employment on May 9, 2007. (*Id.*, Ex. 4.) Defendant argues that Panelli cannot show her termination was caused by her complaint of sexual harassment because (1) she received a written warning of insubordination prior to her complaint of sexual harassment, (2) she acknowledged her own insubordination, and (3) she admitted that she made the sexual harassment complaint because she feared for her job. (*Id.* at 25.) Panelli contends that a temporal nexus exists between her complaint and her termination sufficient to establish causation. (Pls.' Opp. to Summ. J. 32.)

"'[C]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity.'" *Davis*, 520 F.3d at 1094 (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002)). Although an eighteen-month gap is insufficient to support a finding of causation based on timing alone, an adverse employment action taken more than two months after the filing of an administrative complaint gives rise to a prima facie case of causation. *Id.* Here, Defendant terminated Panelli just over two months after she filed her sexual harassment complaint, which is sufficiently proximate to show causation. Defendant is correct that the occurrence of the written warning prior to Panelli's sexual harassment complaint, her acknowledgment of her insubordination, and admission that she filed her sexual harassment complaint cut against finding a causal nexus. However, "[t]he causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Poland v. Chertoff*, 494 F.3d 1174, 1181 n.2 (9th Cir. 2007). In this case, Panelli has shown that her sexual harassment complaint and her termination are not completely unrelated. Thus, Panelli

12

demonstrates a prima facie case of retaliation.

Defendant argues that it terminated Panelli for legitimate, nonretaliatory reasons. (Def.'s Mot. for Summ. J. 25.) Defendant points to the written warning Panelli received on February 28, 2007, in which her substandard performance and insubordination were discussed. (*Id.*, Ex. 9.) Defendant argues that Panelli's eventual termination on May 9, 2007, was a result of her continuing to display this same behavior. (*Id.* at 25.) Specifically, Defendant asserts that Panelli was insubordinate, refused management direction, was unwilling to change her marketing and techniques, and was a no-call/no-show after her vacation. (*Id.*, Ex. 14; Def.'s Reply 18.) Defendant has met its burden in demonstrating a legitimate, nondiscriminatory reason for its decision to terminate Panelli. Thus, the burden shifts back to Panelli to show that the Defendant's reason was a mere pretext for a discriminatory motive.

To survive summary judgment, a plaintiff must introduce evidence sufficient to raise a genuine issue of material fact as to whether the employer's legitimate explanation for terminating her employment is actually a pretext for retaliation. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003). A plaintiff may meet this burden either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000) (citation omitted). When a plaintiff proffers only indirect evidence that the employer's motives were different from its stated motives, a plaintiff must adduce "'specific' and 'substantial' evidence of pretext to survive summary judgment." *Stegall*, 350 F.3d at 1066.

Here, Panelli presents indirect evidence that Defendant's proffered explanation is not believable. Panelli argues that Tyler Miller's involvement in her termination shows that Defendant's legitimate reasons for terminating her were pretextual. (Pl.'s Opp. to Summ. J. 36.) As discussed above, Panelli made a written complaint of sexual harassment on March 5, 2007, and was terminated on May 9, 2007. (Def.'s Mot. for Summ. J., Ex. 4, Ex. 11.) Tyler Miller and Melissa Peter participated in the decision to terminate Panelli. (*Id.*, Ex. 19 at 2.) Devin Stone

denies that he participated in the decision to terminate Panelli but acknowledges that he was "part of the process" with regard to Panelli's termination. (Pl.'s Opp. to Summ. J., Ex. 7 at 88-90.) At the time of Panelli's termination, both Tyler Miller and Devin Stone were aware of the sexual harassment complaint Panelli had made against them. (*Id.*, Ex. 7 at 88, Ex. 8 at 90.)

> [I]f a subordinate, in response to a plaintiff's protected activity, sets in motion a proceeding by an independent decisionmaker that leads to an adverse employment action, the subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process.

*Poland v. Chertoff, 494 F.3d 1174,* 1182 (9th Cir. 2007). Here, Melissa Peters states that the suggestion to terminate Panelli was made by Tyler Miller. (Pl.'s Opp. to Summ. J., Ex. 8 at 98.) Tyler Miller and Melissa Peter ultimately decided together to terminate Panelli. Although Devin Stone did not participate directly in Panelli's termination, he was part of the process. Tyler Miller and Devin Stone were aware of Panelli's complaint of sexual harassment against them before she was terminated. Thus, one of the two ultimate decisionmakers, and two of the three people who were part of the termination process, arguably possessed a retaliatory motive for terminating Panelli. Defendant contends that Panelli admitted her insubordination prior to making her sexual harassment complaint and that Panelli only made her sexual harassment complaint because she feared for her job. (Def.'s Reply 17.) While these facts lend support to Defendant's proffered reason for terminating Panelli, at the summary judgment stage the court must view all facts in the light most favorable to the nonmoving party. In doing so, the court concludes that Panelli presents specific and substantial indirect evidence of pretext. Thus, Panelli establishes a genuine issue of material fact as to the reason she was terminated by Defendant. Accordingly, Defendant is not entitled to summary judgment on Panelli's retaliation claim.

**E.   SEXUAL HARASSMENT - HOSTILE WORK ENVIRONMENT**

Plaintiffs argue they were subject to a hostile work environment resulting from pervasive gender and sexual hostility that interfered with their work performance. (Pls.' Opp. to Summ J.

14

26, 37.) Defendant contends that Plaintiffs' workplaces were not objectively abusive or legally hostile. (Def.'s Mot. for Summ. J. 12-16.)

Although not explicitly included in the text of Title VII, claims based on a hostile work environment fall within Title VII's protections. *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). To survive summary judgment on a claim based on a hostile work environment, "a plaintiff must show that: (1) she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Porter*, 419 F.3d at 892 (*citing Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2004)). "Harassing conduct need not be motivated by sexual desire to support an inference of discrimination." *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000) (citation omitted). Instead, a "general hostility to the presence of women in the workplace" is sufficient. *Id.* (citation omitted).

Additionally, the "working environment must both subjectively and objectively be perceived as abusive." *Fuller v. City of Oakland, California*, 47 F.3d 1522, 1527 (9th Cir. 1995) (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)). To determine if the workplace is objectively hostile, courts examine the issue from the perspective of a reasonable person with the same fundamental characteristics as the claimant. *Id.* Courts must consider all the circumstances in determining whether an environment is sufficiently hostile or abusive. *Kortan*, 217 F.3d at 1110. Key factors in determining whether a work environment is hostile include: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, as opposed to a mere utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23. "[N]o single factor is required . . . and . . . [t]he required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Davis*, 520 F.3d at 1095 (internal quotation marks and citations omitted). "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)' do not constitute a hostile or abusive work environment." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). However, "[o]ffensive

15

comments do not all need to be made directly to an employee for a work environment to be considered hostile." *Id.*

    1. <u>Plaintiff Molnar</u>

Molnar alleges that she was subjected to a hostile work environment primarily based on the conduct of Stone and Tyler Miller in the Fall of 2005 when they toured a project nearby a brothel. (Pls.' Opp. to Summ. J. 9.) According to Molnar, Stone and Miller pressured her to enter the brothel. (Pls.' Compl. 4.) When Molnar refused, Stone said, "Oh please Michelle, I want to go in and see if the wallpaper is 'scratch & sniff.'" (*Id.*) Molnar asserts that Miller suggested everyone eat at the brothel and said, "we can have the 'up-the-butt chicken special.'" (*Id.*) Molnar claims that afterward Stone repeatedly cajoled her to go to dinner at the brothel with their significant others. (Pls.' Opp. to Summ. J., Ex. 4 at 65.) Additionally, Molnar asserts that she was aware of the sexual harassment complaints filed by Gina Breslow and Peggy Panelli. (*Id.*, Ex. 4 at 276-77.) According to Molnar, Stone referred to Breslow as "bitch" when he told Molnar about the sexual harassment complaint Breslow filed. (*Id.*, Ex. 4 at 67.) Molnar also alleges that she witnessed MacDonald refer to another female employee as a bitch. (*Id.*, Ex.4 at 72.) Molnar alleges that Gary MacDonald stated that "he couldn't wait for the men to get a hold" of Cindy Dillon in early 2007. (*Id.*, Ex. 4 at 72.) Molnar claims that Stone often asked her if he was "better looking than Bill," one of Molnar's clients. (*Id.*, Ex. 4 at 266.) Molnar alleges that Miller would comment on who he would like "to do." (*Id.*, Ex. 4 at 70.) Last, Molnar asserts that Stone and Miller would grab their nipples and dance like Austin Powers. (*Id.*)

The conduct to which Molnar was subjected does not rise to the level of severe and pervasive so that it constitutes a hostile work environment. While the comments and conduct Molnar alleges are clearly inappropriate and in bad taste, they occurred over a two-year period with relative infrequency. *See Pieszak v. Glendale Adventist Med. Ctr.*, 112 F. Supp. 2d 970, 992 (C.D. Cal. 2000)(concluding that fifteen to twenty different comments in reference to sex or gender over an eighteen-month period failed to constitute an objectively abusive workplace). Moreover, none of the comments were physically threatening to Molnar and most of the

comments were either made once or sporadically. For example, Molnar alleges that Stone called another employee a "bitch," which she claims is direct evidence of gender discrimination as to her. (Pls.' Opp. to Summ. J. 25, Ex. 4 at 67.) However, the use of the term "bitch" in a statement made to Molnar about another employee is not direct evidence of discrimination because direct evidence is "evidence, which if believed, proves the fact of discriminatory animus without inference or presumption." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1038 (9th Cir. 2005) (citation internal quotations omitted). "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." (*Id.*) (quoting *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005)). Use of the word, "bitch," standing alone, is not sufficient to show gender bias. Although the term "bitch" has a gender-specific connotation, this connotation is not so strong as to establish that Stone, by uttering the word, discriminated against Molnar "because of" her gender. *Fitzer*, 2006 U.S. Dist. LEXIS 9593, 2006 WL 462552, at *4, (citing *Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164, 1168 (7th Cir. 1996), *overruled in part on other grounds by Morgan*, 536 U.S. 101 (calling someone a "bitch" fails to establish conclusively that such harassment "was motivated by gender rather than by a personal dislike unrelated to gender"); *Kriss v. Sprint Commc'ns Co., Ltd. P'ship*, 58 F.3d 1276, 1281 (8th Cir. 1995) (the word "bitch" fails to indicate "a general misogynist attitude," and is not "particularly probative of gender discrimination").

In *Kortan v. California Youth Authority*, 217 F.3d 1104 (9th Cir. 2000), during a meeting with the plaintiff, the plaintiff's supervisor referred to various females in the office as "regina," "madonna," or "castrating bitch," and referred to women generally at "bitches" and "histronics." *Id.* at 1106-07. After plaintiff complained about this conduct, her supervisor referred to her as "Medea." *Id.* at 1107. The court held that the conduct was not frequent, severe, or abusive enough to support a claim for hostile work environment. *Id.* Like the supervisor's conduct in *Kortan*, Stone and Miller's conduct is not so severe and pervasive as to create a hostile work environment.

/ / /

17

Additionally, the trip to the brothel appears to constitute the most egregious conduct to which Molnar was subject, but the court finds it merely amounts to an isolated incident when viewed in light of all the circumstances. As discussed above, "'simple teasing, offhand comments, and isolated incidents (unless extremely serious)' do not constitute a hostile or abusive work environment." *Davis*, 520 F.3d at 1095 (citations omitted).

The conduct in this case is not of the order of magnitude in which courts have found a genuine issue of material fact as to whether the plaintiff was exposed to a hostile work environment. *See Davis*, 520 F.3d 1080 (9th Cir. 2008) (denying summary judgment where a female electrician alleged that over a sixteen-month period a foreman referred to his wife as "astrobitch" and excluded the plaintiff from the area where meetings and breaks were held; another foreman told her "[w]e don't mind if females are working as long as they don't complain" and later said "this is a man's working world out here, you know"; the plaintiff was assigned a disproportionate number of jobs dealing with hazardous material; she found a sticker on her car that said "Lady Killer" after she filed an administrative complaint; she heard a co-worker say "[l]ips and assholes, that's all women are good for"; and co-workers attempted to give her a "sexual call name"); *see Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104 (9th Cir. 1998) (reversing the district court's grant of summary judgment where a female employee of a mining company alleged that over a two-year period her supervisor made sexual remarks about her, in and out of her presence; frequently called her "beautiful" and "gorgeous" rather than her name; told her about his sexual fantasies, including his desire to have sex with her as well as his wife; joked that the answer to a riddle about what a Mexican prostitute was called is "frijole"; several times remarked about Draper's "ass" and commented to others that "it would be fun to get into [Draper's] pants"; and on one occasion used the loudspeaker to ask whether she needed help changing clothes and said there were several guys willing to help, and on another, after Draper had taken off a sweatshirt, to ask whether that was all she was going to take off). In short, the conduct to which Molnar was subject is not frequent, severe, or abusive enough to support a claim for a hostile work environment. Thus, the court will grant summary judgment on Molnar's

hostile work environment claim.

### 2. Plaintiff Panelli

Panelli alleges that she was subjected to a hostile work environment based on the comments and conduct of Devin Stone and Tyler Miller. Panelli claims at a lunch with Stone, Miller, and MacDonald, Stone and Miller discussed a marketing representative with "big tits" and said "all she had to do was just shake her tits . . . and she would get whatever she wanted . . . ." (Pls.' Opp. to Summ. J., Ex. 9 at 28-29.) Panelli alleges that Stone and Miller continued to engage in inappropriate conduct at the lunch. (*Id*.) Panelli also claims that Stone twice told her "you're a good looking girl, can't you go in there and sweet talk them." (Def.'s Mot. for Summ. J., Ex. 2 at 39.) Like Molnar, Panelli asserts that Stone and Miller would grab their nipples and dance like Austin Powers, and that Miller would comment on who he would like "to do." (Pls.' Opp. to Summ. J, Ex. 5 at 41-42.) Panelli claims that she felt physically threatened on one occasion when Stone slammed her desk and wagged his finger at her. (*Id*., Ex. 9 at 50-51.) Panelli alleges that she heard Tyler Miller and Devin Stone each refer to Molnar as a "bitch" on ten occasions. (Def.'s Mot. for Summ. J., Ex. 2 at 292-93.) Panelli claims she was aware of Molnar's brothel incident. (Pls.' Opp. to Summ. J., Ex. 9 at 47-48.) Last, Panelli asserts that she found it difficult to do her job because of the sexually harassing environment. (*Id*., Ex. 9 at 19.)

In material part, the conduct to which Panelli points is similar to the conduct to which Molnar points, and thus, the result is the same – Panelli fails to show the conduct to which she was subjected rises to the level of severe and pervasive so that it constitutes a hostile work environment. The lunch incident, like the brothel incident, merely amounts to an isolated event of inappropriate and offensive behavior. Furthermore, much of the comments and conduct of Stone and Miller appears to be offhand comments and conduct that is not of the type that is so severe and pervasive as to alter Panelli's conditions of employment. Like Molnar, Panelli asserts that the use of the word "bitch" evidences the gender discrimination to which she was subject. (Pls' Opp. to Summ. J. 35.) Panelli claims to have heard this term used with more frequency than Molnar. Panelli alleges that she heard Tyler Miller and Devin Stone each refer to Molnar as a

19

"bitch" on ten occasions. (Def.'s Opp. to Summ. J., Ex. 2 at 292-93.) As discussed above, this term, standing alone, is not sufficient to show gender bias, even when used with slightly more frequency. Although Panelli alleges that she subjectively found it difficult to do her job, the environment to which she was subject must also be considered abusive by an objective reasonable women. *Davis*, F.3d at 1096. Like Molnar, the comments and conduct Panelli alleges are clearly inappropriate and in bad taste; however, they occurred over a two-year period with relative infrequency. Even when viewing the facts in the light most favorable to Panelli, the conduct is not egregious enough to be, objectively, sufficiently hostile. Thus, Panelli fails to show the conduct to which she was subject was frequent, severe, or abusive enough to support a claim for a hostile work environment. Thus, the court will grant summary judgment on Panelli's hostile work environment claim.[3]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion For Summary Judgment (Doc. #39) is **GRANTED** in part and **DENIED** in part as follows:

1) Summary judgment on Claims 1, 2, and 4 as to Plaintiff Panelli and Plaintiff Molnar is **GRANTED**.

2) Summary judgment on Claim 3 as to Plaintiff Molnar is **GRANTED**.

3) Summary judgment on Claim 3 as to Plaintiff Panelli is **DENIED**.

DATED: March 30, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

---

[3] Both Plaintiffs argue that the mere presence of Stone and Miller in the workplace constituted a hostile work environment. "[I]n some cases the mere presence of an employee who has engaged in particularly severe or pervasive harassment can create a hostile working environment." *Ellison v. Brady*, 924 F.2d 872, 883 (9th Cir. 1991). Because the court finds that Stone and Miller's conduct, in combination, fails to rise to the level of severe and pervasive, the court concludes that individually their conduct is also not severe and pervasive. Thus, Plaintiffs' argument that either Stone or Miller's mere presence constituted a hostile work environment is unpersuasive.